UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| LEANORA M. NORWOOD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| v. ) | No. 3:11-CV-398 |
| ) | (PHILLIPS/SHIRLEY) |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 12, 13] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 16, 17]. Plaintiff Leanora Norwood seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On January 12, 2009, the Plaintiff filed an application for a period of disability, disability insurance benefits, and/or supplemental security income, claiming a period of disability which began June 18, 2008. [Tr. 114, 118]. After her application was denied initially and also denied upon reconsideration, the Plaintiff requested a hearing. On June 29, 2010, a hearing was held before an ALJ to review determination of Plaintiff's claim. [Tr. 33-47]. On August 5, 2010, the ALJ found that the Plaintiff was not disabled.

The Appeals Council denied the Plaintiff's request for review; thus, the decision of the ALJ became the final decision of the Commissioner. The Plaintiff now seeks judicial review of the Commissioner's decision.

**I.     ALJ FINDINGS**

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

2. The claimant has not engaged in substantial gainful activity since June 18, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: pseudoseizures, obesity, diabetes mellitus type II, and depressive disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant is limited to light exertion as defined in 20 CFR 404.1567(b) and 416.967(b) by obesity, diabetes, and hypertension. She should avoid hazards, unprotected heights, dangerous machinery, working closely with others, as opposed to just superficially, and could not meet strict or high production standards.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on October 8, 1968 and was 39 years old, which is defined as a "younger individual", on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a high school education and is able to

2

Case 3:11-cv-00398-TWP-CCS   Document 18   Filed 08/31/12   Page 2 of 18   PageID #: 93

communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See Social Security Ruling 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 18, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 17-25].

## II. DISABILITY ELIGIBILITY

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national

3

economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1.  If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3.  If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5.  Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).  Plaintiff bears the burden of proof at the first four steps.  Walters, 127 F.3d at 529.  The burden shifts to the Commissioner at step five.  Id.  At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform.  Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

4

## III.     STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was

5

reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See id. at 547.

On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV.   POSITIONS OF THE PARTIES

The Plaintiff presents three allegations of error. First, she argues that the ALJ erred by not considering the limitations resulting from the Plaintiff's pseudoseizures in his residual functional capacity ("RFC") determination. The Plaintiff also argues that the ALJ erred by failing to analyze the Plaintiff's impairments under Listing 12.07 of 20 C.F.R. Part 404, Subpart P, Appendix 1. Finally, the Plaintiff argues that the ALJ erred in his considering of the findings of Richard A. Dew, M.D., a treating physician.

The Commissioner responds that the ALJ's decision is supported by substantial evidence, and it complies with the applicable legal standards. The Commissioner maintains that the ALJ's RFC finding is supported by substantial evidence and reflects the limitations resulting from her pseudoseizure impairment. The Commissioner argues that any error the ALJ committed by not discussing Listing 12.07 is harmless. The Commissioner also maintains that the ALJ's decision to give no weight to the opinion of Dr. Dew is supported by substantial evidence.

V.  ANALYSIS

The Court will address each of the Plaintiff's allegations of error in turn.

A.  **The Residual Functional Capacity Determination**

At the hearing before the ALJ, the Plaintiff testified that she suffers from daily seizures, which she stated are accompanied by loss of consciousness, loss of bladder control, and jerking body motions. [Tr. 36]. An EEG performed at the University of Tennessee Medical Center confirmed the occurrence of these episodes, though they were found to be psychogenic rather than epileptic. [Tr. 439]. The ALJ found these pseudoseizures[1] to be a severe impairment at step two of the sequential evaluation, but the Plaintiff argues that the ALJ erred by not incorporating these episodes into his RFC determination. [Doc. 13 at 12-13]. The Plaintiff argues that the ALJ did not comply with Social Security Ruling 96-8p. [Doc. 13 at 13].

The Commissioner responds that the ALJ did consider these episodes in his RFC determination. The Commissioner notes that the ALJ limited the Plaintiff to light exertion based

---

[1] The term "pseudoseizures" is sometimes used to describe psychogenic/non-epileptic seizures. It should not be considered as "false" seizures, given the usual definition of "pseudo." This appears to be misunderstood by the ALJ who felt the examining physician Dr. Wiseman "clearly concluded" these video-documented seizures "were not actual seizures," but suggested a "non-physiologic etiology." Dr. Wiseman reached no such conclusion. He simply confirmed the seizures were not epileptic in nature but psychogenic in nature. He did not state they were not actual seizures.

7

upon her obesity, diabetes, and hypertension. [Doc. 17 at 15]. The Commissioner maintains that the ALJ also incorporated limitations to address these pseudoseizure episodes, including: avoiding hazards, avoiding unprotected heights, and avoiding dangerous machinery. [Doc. 17 at 15-16].

Social Security Ruling 96-8p explains, "RFC is what an individual can still do despite his or her limitations." It "is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical or mental activities." SSR 96-8p at *2. In determining a claimant's RFC the ALJ must consider limitations and restrictions imposed by all of an individual's impairments. Id. at *5.

In this case, the ALJ found that the Plaintiff had four severe impairments: pseudoseizures, obesity, diabetes mellitus type II, and depressive disorder. [Tr. 17]. The ALJ incorporated the latter three of these impairments into the RFC by restricting the Plaintiff to light work. [Tr. 21]. He incorporated the pseudoseizure impairment into the RFC determination by finding that the Plaintiff should avoid hazards, including unprotected heights and dangerous machinery. [Id.]. The ALJ also found that the Plaintiff should work closely with others, a requirement that could aid if the Plaintiff suffered a pseudoseizure episode.

The ALJ's incorporation of these conditions into the RFC to account for the pseudoseizure condition is consistent with some of the medical evidence in the record. Nathanial Robinson, M.D., a reviewing physician, found that the Plaintiff should avoid hazards due to the

pseudoseizure disorder.[2] [Tr. 347]. This finding was reaffirmed by James M. Moore, M.D., a second reviewing physician. [Tr. 396]. However, Dr. Dew felt she could not work at all due to the threat of seizures. [Tr. 457].

These restrictions were incorporated into the RFC hypothetical presented to the vocational expert for the express reason of addressing the pseudoseizures. The ALJ instructed the vocational expert to assume the record suggests pseudoseizures and that because "of this she needs to avoid hazardous work, work [INAUDIBLE] dangerous machinery, that kind of thing." [Tr. 44]. These limited restrictions were presented in the RFC provided to the vocational expert, which ultimately served as the basis for the finding that there were jobs available in the economy that the Plaintiff could perform.

> The ALJ held:
>
>> With regard to the allegation of epileptic seizures, the record does not substantiate the claimant's allegations. Two of the alleged seizures were recorded on video but the examining physician clearly concluded that these episodes were not actual seizures but suggested a non-physiological etiology. Thus the claimant does not suffer a neurological impairment within the scope of section 11.00 of the listings.

[Tr. 21].

However, in light of Dr. Dew's reports indicating an ongoing seizure disorder since 2008, affirming seizure convulsions two to three times per week and her inability to work due to the threat of these seizures, [Tr. 456-57], coupled with the acceptance of this seizure activity by the other medical providers,[3] and the confirmation of the validity of the seizure activity by Dr.

---

[2] Dr. Robinson's report also appears to accept the validity of the symptoms alleged by the Plaintiff, in this case "of seizures 4-5 times a week," [Tr. 348], and Plaintiff's need for psychogenic treatment, [Tr. 350]. Curiously Dr. Robinson's report, dated March 16, 2009, references Dr. Blake's psychological examination some three weeks later on April 3, 2009.
[3] The following medical providers also noted Plaintiff's seizure activity and none discounted it; several

9

Wiseman on the video EEG, [Tr. 437-39], as well as her inability to drive due to the seizure threat it appears that the nature and extent of the seizures – including incontinence and loss of consciousness – are valid — albeit, they are not neurologically based or epileptic in nature.

Because this matter is being remanded to further address the opinions of her treating physician Dr. Dew, and because the Court would recommend that the ALJ additionally address how someone with seizures – albeit, of the psychogenic, non-epileptic type – that occur multiple times a week can work at all, or why the limitations would only include not working around dangerous machinery or avoiding hazardous work, the remand will include addressing the RFC determination in this regard.

**B.     Listing 12.07, 20 C.F.R. Part 404, Subpart P, Appendix 1**

The Plaintiff next argues that the ALJ erred by not discussing Listing 12.07 in 20 C.F.R. Part 404, Subpart P, Appendix 1, which addresses somatoform disorders. The Plaintiff reviews the requirements that must be met to qualify for disability under this Listing, including the "A" criteria and the "B" criteria, but she does not state how her conditions fulfill either of these criteria. [Doc. 13 at 15]. She alleges simply that because the ALJ did not articulate a finding under Listing 12.07, the decision should be remanded to discuss application of Listing 12.07. [Doc. 13 at 16].

The Commissioner does not appear to contest the Plaintiff's assertion that the ALJ did not discuss Listing 12.07, and further, the Commissioner appears to concede that the ALJ's failure to discuss Listing 12.07 may have been an error. The Commissioner, however, argues that the ALJ considered both Listing 12.04 and 12.06, which require the same "B" criteria be

---

recommended treatment for it: Dr. Robinson [Tr. 348], Dr. Moore [Tr. 396], Dr. Blake [Tr. 352], Dr. Wiseman [Tr. 437], Cherokee Health Systems [Tr. 446, 449, 450, 451, 454], Mountain Hope Good Shepard Clinic [Tr. 244-54] and Dr. Welch [Tr. 412].

met, and the ALJ found that the Plaintiff did not fulfill the "B" criteria. [Doc. 17 at 5-6]. The Commissioner, thus, maintains that the error was harmless because the ALJ has already made a finding that would preclude establishing disability under Listing 12.07. [Doc. 17 at 9].

Listing 12.07 addresses "physical symptoms for which there are no demonstrable organic findings or known physiological mechanism." 20 C.F.R. Part 404, Subpart P, App'x 1. In order to be disabled pursuant to Listing 12.07, a claimant must demonstrate both "A" criteria and "B" criteria.

The "A" criteria are fulfilled by demonstrating persistent nonorganic disturbance including movements such as psychogenic seizures. Because the medical evidence in the record demonstrates that the Plaintiff experienced psychogenic seizures, the Court will assume that the medical evidence would support finding the "A" criteria to be fulfilled.

The "B" criteria require a demonstration that the "A" criteria have resulted in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. These "B" criteria are the same in Listing 12.04, Listing 12.06, and Listing 12.07.

In this case, the ALJ analyzed the "B" criteria and explained:

> The claimant's mental impairment does not meet or medically equal the criteria of listings 12.04 and 12.06. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairment must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. . . .
>
> In activities of daily living, the claimant has moderate restrictions.

11

> The claimant reported that she attends to her personal needs, feeds pets, and prepares simple meals. In social functioning, the claimant has moderate difficulties. The claimant reported shopping and talking and visiting with family. She is apparently able to function in an appropriate manner in the public domain, in such places as doctor's offices, grocery stores, and other facilities. The claimant demonstrated no abnormal social behaviors during the hearing. With regard to concentration, persistence or pace, the claimant has moderate difficulties, as she reported watching television and doing laundry and light housekeeping. At the hearing, the claimant demonstrated average intellectual functioning and was able to understand and follow the hearing proceedings and all lines of questioning. As for episodes of decompensation, there is no indication that the claimant has experienced any episodes of decompensation.

[Tr. 20].

The Court finds that the ALJ erred by not specifically address Listing 12.07, but initially finds that this error would appear to be harmless and alone would not necessitate a remand. The ALJ found that the Plaintiff did not met the "B" criteria contained in Listing 12.06 and 12.04. Because the same "B" criteria are preconditions to a finding of disability under Listing 12.07, the ALJ findings pursuant to 20 C.F.R. Part 404, Subpart P, Appendix 1, would preclude a finding of disability under Listing 12.07. The Plaintiff has not directed the Court to any evidence that would undermine the findings the ALJ made with regard to the "B" criteria, and the evidence in the record including the findings of Larry W. Welch [Tr. 400, 410, 412], support the ALJ's findings with regard to the "B" criteria. Because this matter is being remanded, the ALJ will, however, have the opportunity to address Listing 12.07.

Additionally, it does not appear that the ALJ considered Listings 11.02 or 11.03. Admittedly Listings 11.02 and 11.03 apply to epileptic seizures, and it does not appear that the Plaintiff would qualify for those Listings by virtue of the non-epileptic nature of her seizures. However, when a claimant's condition does not meet the specific criteria of a listed impairment,

they can still establish presumptive disability by showing her impairment and symptoms are "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a) (*i.e.* "medical equivalence"). On remand, the ALJ should determine if the Plaintiff's impairments and symptoms "are at least equal in severity and duration" to those found in Listings 11.02 and 11.03.

**C.     Robert A. Dew, M.D.**

The Plaintiff next argues that the ALJ erred by affording no weight to the opinion of Robert A. Dew, M.D., a treating physician, and not properly explaining the basis of his decision.

The Commissioner maintains that the ALJ's explanation that Dr. Dew's findings were inconsistent with the benign clinical examinations and conservative treatments was sufficient. [Doc. 17 at 12-13; Tr. 22]. The Commissioner also directs the Court to the Plaintiff's activities of daily living and argues that the Plaintiff's activities are inconsistent with the extreme limitations found by Dr. Dew. [Tr. 17 at 13].

Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it must be given controlling weight. 20 C.F.R.§§ 404.1527(d)(2) and 416.927(d)(2). But where an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R.§§ 404.1527(d)(2) and 416.927(d)(2).

13

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision. 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (1996). Nonetheless, the ultimate decision of disability rests with the ALJ. King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).

The Court should first clarify that there are three opinions that Dr. Dew has rendered in this case:

1. On May 20, 2009, Dr. Dew opined Plaintiff would miss more than two days per month from work due to her seizures. He indicated Plaintiff could continuously sit "X" hours, stand two hours, and walk one hour out of an eight-hour workday. She could occasionally (up to 1/3 of a workday) lift up to 10 pounds; never bend, stoop, squat, kneel, climb stairs, crawl, reach above her shoulders or walk on uneven surfaces; and must avoid humidity, noise and moving machinery. [Tr. 371-74].

2. A year later, on June 9, 2010, Dr. Dew issued a less restrictive opinion indicating Plaintiff could sit up to eight hours in an eight-hour day, thirty minutes continuously; stand up to eight hours in an eight-hour workday, fifteen minutes continuously; walk up to four hours in an eight-hour workday, ten minutes continuously; lift up to twenty pounds occasionally; and could climb, twist, bend, stoop, reach above shoulder level; but could not operate a car. [Tr. 456]. Dr. Dew stated Plaintiff was unable to work due to

14

the threat of generalized seizures, and Dr. Dew noted that the Plaintiff needs to see a neurologist. [Tr. 457].

3. On April 13, 2011, Dr. Dew noted Plaintiff's previously virtually uncontrollable seizures were down to two to three seizures per week, with adjustment of medications, but she was "totally unemployable." [Tr. 460]. Plaintiff presented this opinion to the Appeals Council. [Tr. 458-61].

The Court first finds that the last of these opinions, which was rendered on April 13, 2011, is not before the undersigned. The Plaintiff has not shown good cause or demonstrated another basis for including this evidence in the Court's review despite its having not been presented to the ALJ. See Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996) (noting plaintiff must demonstrate the evidence is new and material, and that good cause existed for not presenting it in the prior proceeding, for the court to consider whether remand is appropriate). Accordingly, Dr. Dew's April 13, 2011 opinion, which was not before the ALJ, is not at issue here, at this time.

Next, the Court finds that any error in not addressing or affording proper weight to the opinion issued on May 20, 2009, is harmless because the findings contained therein were later updated and revised and are contained in the opinion dated June 9, 2010. Thus, the issue before the Court is whether the ALJ erred in addressing the opinion rendered June 9, 2010.

The ALJ explained the weight afforded to this opinion by stating:

> No weight is assigned to the limitations assigned by Dr. Dew in June 2010, as they are inconsistent with the claimant's benign clinical examinations and conservative treatment, which renders [them] less persuasive. The possibility always exists that a physician may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another. . . .

15

[Tr. 22].

The Court finds that this discussion does not comply with the ALJ's statutory obligations. The worksheet on which Dr. Dew rendered his opinions calls for short-answers to a variety of questions about the Plaintiff's physical abilities. The findings rendered therein might be undermined on a number of fronts: portions of the findings are inconsistent with the Plaintiff's self-reports about her daily activities; the findings are rendered by a family practitioner rather than a specialist; the findings do not reference specific evidence from any physical examination performed by Dr. Dew; it is not clear from the record when Dr. Dew last examined the Plaintiff; and the records of visits with Dr. Dew do not indicate or discuss extreme physical limitations [Tr. 421-423]. The ALJ *did not*, however, state any of these issues as possible grounds for discounting the findings rendered by Dr. Dew. Instead, he generically cited "benign clinical examinations," "conservative treatment," and what can be termed "possible other motivations."

This case is similar to Friend v. Commissioner of Social Security, 375 Fed. App'x 543 (6th Cir. 2010). In Friend, the ALJ rejected the opinion of a Dr. Angerman, a physician who had seen the plaintiff's on a few occasions and completed a worksheet describing the plaintiff's ability to stand, etc. Id. at 547. The ALJ explained simply that "the testimony of [a medical reviewing expert], which would allow the claimant to stand/walk for one hour [at a] time to a total of six hours in an eight hour workday, is more consistent with the objective clinical findings," and "there is no basis for Dr. Angerman's conclusion that the claimant can stand/walk for only one hour in a day." Id. at 551. The Court of Appeals for the Sixth Circuit found this reasoning was statutorily insufficient explaining, "Put simply, it is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's

16

conclusion that gets the short end of the stick." Id. at 552. The Court of Appeals further found that the error was not harmless and remand was appropriate.

The Court finds that the same outcome is appropriate here. The Court finds that the ALJ erred, and though there might be grounds upon which Dr. Dew's opinion could be attacked, the Court cannot say that the opinion is "patently deficient" so as to render the error committed harmless. Moreover, the Commissioner has not argued that the opinion is "patently deficient."

Accordingly, the undersigned finds that the Plaintiff's allegation that the ALJ erred in addressing the opinion rendered by Dr. Dew on June 9, 2010, is well-taken, and the undersigned will recommend that this case be remanded for the purpose of considering this opinion and explaining the weight afforded to it consistent with 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Because the case is being remanded, the ALJ may now also consider Dr. Dew's April 13, 2011, report and opinion.

17

## VI. CONCLUSION

Accordingly, the Court finds that the ALJ erred in addressing the opinion rendered by Dr. Dew on June 9, 2010. The Court finds that the ALJ's finding that the Plaintiff can complete light work is supported by substantial evidence in all other respects. Therefore, it is hereby **RECOMMENDED**[1] that Plaintiff's Motion For Summary Judgment **[Doc. 12]** be **GRANTED IN PART** and **DENIED IN PART** and that the Commissioner's Motion for Summary Judgment **[Doc. 16]** be **GRANTED IN PART** and **DENIED IN PART**.

The undersigned **RECOMMENDS** that this matter be **REMANDED** to the Commissioner for re-evaluation of the Plaintiff's alleged period of disability consistent with the findings contained herein.

Respectfully submitted,

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).